## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

PAMELA JEAN PETERSON                                                    PLAINTIFF

v.                                       No. 4:12CV00712 JLH

CAROLYN COLVIN, Acting Commissioner,
Social Security Administration                                         DEFENDANT

### OPINION AND ORDER

On April 19, 2010, Pamela Jean Peterson applied for disability insurance benefits.  Tr. 109.

She alleges disability beginning July 11, 2008,[1] when she was discharged from the Army National

Guard.  *Id*.  After the Commissioner denied the application, Tr. 69, 73, Peterson sought a hearing

before an ALJ.  Tr. 77.  On April 5, 2011, an ALJ held a hearing, and on May 21, 2011, the ALJ

issued an unfavorable decision, concluding that Peterson is not disabled under the Social Security Act.

Tr. 23-33.  Peterson asked the Appeals Council to review the decision.  Tr. 15.  The Appeals Council

denied the request.  Tr. 1.  The ALJ's decision thus became the Commissioner's final decision for the

purpose of judicial review.  *See* 42 U.S.C. § 405(g).  Peterson commenced this action on November,

13, 2012, seeking judicial review.

**Scope of judicial review**.  When reviewing a decision denying an application for disability

benefits, the Court must determine whether substantial evidence supports the decision and whether

the Commissioner made a legal error.  *See* 42 U.S.C. § 405(g) (requiring court to determine whether

Commissioner's findings are supported by substantial evidence and whether Commissioner conformed

with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the

---

[1] Peterson's application alleges an onset date of June 11, 2008.  Tr. 109.  She was discharged from the military on July 11, 2008.  Tr. 122.  Both dates appear in the records as her alleged date of onset.  *Cf*. Tr. 69 and 73.

Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled."). Substantial evidence is more than a mere scintilla of evidence; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In determining whether substantial evidence supports the Commissioner's decision, the Court must consider evidence detracting from the decision as well as evidence supporting the decision, but the Court may not reverse the decision simply because substantial evidence supports a contrary decision. *See Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

**The disability-determination process**. The Commissioner's regulations set forth a five-step process for evaluating disability claims. *See* 20 C.F.R. § 404.1520.

> In step one, the ALJ decides whether the claimant is currently engaging in substantial gainful activity; if the claimant is working, he is not eligible for disability insurance benefits. In step two, the ALJ determines whether the claimant is suffering from a severe impairment. If the claimant is not suffering a severe impairment, he is not eligible for disability insurance benefits. At the third step, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in Appendix 1 of the regulations (the "listings"). If the claimant's impairment meets or equals one of the listed impairments, he is entitled to benefits; if not, the ALJ proceeds to step four. At step four, the ALJ determines whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. If the claimant remains able to perform that past relevant work, he is not entitled to disability insurance benefits. If he is not capable of performing past relevant work, the ALJ proceeds to step five and considers whether there exist work opportunities in the national economy that the claimant can perform given his or her medical impairments, age, education, past work experience, and RFC. If the Commissioner demonstrates that such work exists, the claimant is not entitled to disability insurance benefits.

*McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (citations omitted). The claimant bears the burden of proving disability. If she shows she cannot do her past relevant work, the Commissioner

must show work exists that the claimant can do.  *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992).

**Peterson's work and medical history**.  Peterson served as an administrative specialist in the Arkansas Army National Guard for 22 years.  Tr. 122, 165.  She was twice activated to the U.S. Army — for four months in 1985 and four months in 1991. Tr. 109, 385.  During her service, she sustained service-connected injuries.  She was honorably discharged on July 11, 2008.  Tr. 122. Other than her service in the Army National Guard, Peterson worked very little since she first enlisted.  Tr. 132, 165.

After her discharge, Peterson applied for service-connected disability compensation from the Veterans Administration (VA).  The VA initially awarded a 70% disability rating, Tr. 202-04, but later increased the award to 80%.  Tr. 207-08.  Peterson then applied for disability insurance benefits. Tr. 109.  She also sought an individual unemployability award from the VA.

Three months after applying for disability insurance benefits, the VA awarded individual unemployability, entitling Peterson to service-connected compensation at 100%, effective October 8, 2009.  Tr. 335, 385.  Peterson bases her claim for disability insurance benefits on the medical conditions underlying her VA claims — skin cancer, hidradenitis suppurativa, frostbite, and problems with her back, lungs, right shoulder, and right ankle.  Tr. 124.

**The Commissioner's decision**.  At step one of the disability-determination process, the ALJ determined Peterson has done no substantial gainful activity since July 11, 2008.  Tr. 25.  At step two, the ALJ determined Peterson's ability to work is impaired by degenerative disc disease in the low back, right shoulder bursitis, and reactive airway disease. Tr. 25.  At step three, the ALJ found Peterson does not meet the severity requirements for a listed impairment.  At step four, the ALJ

3

determined Peterson can do light work, to include her past work.  Tr. 26, 33.  Because a person who can do her past work is not disabled, the ALJ determined Peterson is not disabled under the Social Security Act and denied the application.  20 C.F.R. § 404.1520(a)(4)(iv) ("If you can still do your past relevant work, we will find that you are not disabled.").

**Peterson's allegations of error**.  Peterson challenges the ALJ's decision that she can work.  She maintains the ALJ did not properly consider the VA's determination about her unemployability.  She maintains frostbite, her right ankle problem, and hidradenitis suppurativa are severe impairments that the ALJ failed to consider in determining whether she can work.  She contends the ALJ should have reduced her ability to work by: (1) environmental limitations due to reactive airway disease, (2) standing limitations due to right ankle impairment, (3) a sitting limitation due to pins and needles sensation in her hands and feet from frostbite, (4) pushing and pulling limitations due to her right shoulder, and (5) postural and manipulative limitations due to degenerative disc disease of the lumbar spine.  She contends that the ALJ's decision is not supported by substantial evidence.  She questions whether her military work should have been considered as past work.

For substantial evidence to support the ALJ's decision, a reasonable mind must accept the evidence as adequate to show Peterson can do light work.  *Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).

Peterson faults the ALJ's treatment of the VA's disability decisions, but the ALJ properly considered the VA's decisions.  "The ALJ should consider the VA's finding of disability, but the ALJ is not bound by the disability rating of another agency when he is evaluating whether the claimant is disabled for purposes of Social Security benefits."  *Pelkey v. Barnhart*, 433 F.3d 575, 579 (8th Cir.

4

2006) (citation omitted).  The ALJ discussed the reasons for the VA's awards and acknowledged the differences between the VA's rules for disability benefits and the Commissioner's rules.  Tr. 31-32. The VA's rules resolve doubts about disability in favor of the veteran, 38 C.F.R. §§ 3.102, 4.2, 4.3, while an ALJ must evaluate the claimant's credibility before determining her ability to work and rely on competent medical evidence.  *Ellis v. Barnhart*, 392 F.3d 988, 995-96 (8th Cir. 2005); *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996); *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992).

Here, the ALJ evaluated Peterson's credibility using the required two-step process and the required factors.  *See* SSR 96-7p, *Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.  The ALJ properly determined that Peterson over-stated her pain and limitations.

The ALJ must "establish, by *competent medical evidence*, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments."  *Ostronski*, 94 F.3d at 418 (emphasis added).  A reasonable mind would accept the following medical evidence as adequate to show Peterson can do light work:

Evidence about skin disorders.  Peterson complained about draining skin nodules during her military service.  Tr. 383.  The VA disability medical examiner diagnosed hidradenitis suppurativa, a skin condition characterized by recurring abscesses in the armpits and sometimes in the groin. *Rhodes v. Colvin*, No. 12-CV-1762-PHX-LOA, 2013 WL 6804194, at *1 n.2 (D. Ariz. Dec. 13, 2013).  Treatment typically requires a surgical procedure to remove the sweat glands.  *Id*.  Although the VA awarded a 10% disability for the condition, the medical evidence shows that this condition does not prevent Peterson from engaging in light work.

On June 23, 2009, Peterson saw a dermatologist for a flare-up of hidradenitis suppurativa. Tr. 280. The dermatologist noted that Peterson has a history of nonmelanoma skin cancer — in 2003, nonmelanoma skin cancers were removed from the upper lip and left cheek. Tr. 317. *See* Tr. 315 (2008 biopsy of tip of nose, no evidence of basal cell carcinoma). Although nonmelanoma skin cancer is usually caused by too much sun, Peterson uses no sun screen or sun protection. Tr. 280.

Because Peterson used over-the-counter products for hidradenitis suppurativa, the dermatologist prescribed medications. Tr. 280. When Peterson returned on February 26, 2010, a second dermatologist observed no active pustules or draining sinuses, and prescribed additional medication. Tr. 249-50. Peterson was not interested in surgical treatment. Tr. 249. The second dermatologist advised Peterson to stop smoking, based on evidence showing hidradenitis suppurativa improves with smoking cessation. Tr. 250. In July of 2011 Peterson reported that she continued to smoke two packs a day. Tr. 480.

There is no cure for hidradenitis suppurativa, but the medical evidence indicates Peterson's symptoms respond to treatment. "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004). Peterson's failure to comply with treatment recommendations weighs against her claim. *Dodson v. Astrue*, 346 Fed. Appx. 123 (8th Cir. 2009). Her work history shows that her skin conditions do not significantly limit her ability to do basic work activities because she worked with her skin conditions for many years and no evidence shows her skin conditions deteriorated. 20 C.F.R. § 404.1521(a) (explaining what "not severe" means). A reasonable mind would accept the evidence as adequate to show Peterson can do light work. No evidence supports a further reduction in the ability to work due to the skin conditions.

Evidence about back problems.  Peterson began to complain about back pain in September 2007 after lifting heavy buckets of water as part of her military service.  Tr. 378, 510.  Although the VA examiner found a normal gait, normal range of motion, normal motor strength, and no muscle spasm, the VA awarded a 10% disability based on back strain and degenerative changes.  Tr. 378.  Recent diagnostic imaging confirms the presence of stable degenerative changes.  Tr. 510-11.  Those changes account for complaints of back pain, but do not prevent light work.

Peterson insists that disabling pain persists, despite trigger point injections, pain medication, physical therapy, and acupuncture, but her treatment records reflect that Meloxicam, which is used to treat pain caused by osteoarthritis,[2] worked well.[3]  *See* Tr. 480.  Peterson's back pain is not severe enough to prevent her from raising chickens, which requires a lot of squatting.  Tr. 422.  Peterson reported that she wears a back support when she cleans her pets, Tr. 181, her back support helps when she works, Tr. 247, and she is fairly active at home, Tr. 361.  These reports suggest that she can do more than alleged.

Two medical experts reviewed the medical evidence and opined that Peterson can do light work without postural limitations.  Tr. 334, 371.  A reasonable mind would accept the evidence about degenerative changes as adequate to show Peterson can do light work because her back condition does not prevent her from lifting, carrying, walking, standing, sitting, pushing, or pulling.

Evidence about frost bite.  Peterson's claim of frostbite to the hands and feet flows from a military training exercise in 1991.  Tr. 380-82.  The VA examiner found the hands and feet had normal motor strength, sensation, reflexes, and skeletal function.  *Id.* The VA awarded a 10 %

---

[2] *See* http://nih.gov/medicineplus/druginfo/meds/a601242.html.

[3] Elsewhere, Peterson reported that Meloxicam did not help.  Tr. 363.

disability for each hand and foot, Tr. 376-77, concluding that "the evidence does not show a marked interference with employment or frequent periods of hospitalization due" to cold injury.  Tr. 381. Peterson's work history shows that the residuals of the 1991 injury do not prevent her from light work.

Peterson continued to do light work — notably, work requiring the use of her hands and sustained sitting — until 2008.  This history shows that frostbite does not significantly limit Peterson's ability to do basic work activities. 20 C.F.R. § 404.1521(a) (explaining what "not severe" means).  A reasonable mind would accept the evidence as adequate to show Peterson can do light work because she did light work for many years after her injuries and because no evidence shows her condition deteriorated.  No evidence supports a further reduction in the ability to work due to the residuals of frostbite.

Evidence about lung problems.  The VA examiner diagnosed reactive airway disease, a general term referring to the inflammation of airways of the lungs, often following inhalation of fumes or smoke.  The VA examiner "indicated it was more than likely incurred during [Peterson's] service in 1988." Tr. 379.  Peterson continued to work despite the 1988 dust inhalation until 2008.  Recent lung function testing shows no significant reduction in lung function.  Test results fall within the normal range.  Tr. 270, 299, 401.  The VA examiner concluded that "the evidence does not show a marked interference with employment or frequent hospitalizations" due to reactive airway disease. Tr. 379.

As with other respiratory impairments, treating reactive airway disease includes avoidance of pulmonary irritants and allergens.  Doctors consistently advised Peterson to cease smoking, but she has continued to smoke.  Tr. 260, 364, 462, 480.  Peterson lives in a dusty environment; raising

chickens aggravates her allergies. Tr. 505. Peterson's continued exposure to pulmonary irritants and allergens weighs against her claim. It does not implicate a need for environmental limitations. A reasonable mind would accept the evidence as adequate to show Peterson can do light work because she worked for 20 years after the dust inhalation, her lung function is normal, and she does not avoid pulmonary irritants or known allergens.

Evidence about the right shoulder. Peterson complained about right shoulder pain in 2000 after doing push-ups during military training. Tr. 236, 383. *But see* Tr. 396 (she said she was hurt when an overhead came down on her right shoulder). The VA examiner found no tenderness, weakness, fatigability, or loss of endurance, but reported a somewhat diminished range of motion due to pain and grinding with rotation. Tr. 236. The examiner diagnosed bursitis, inflammation of the fluid-filled sac around the shoulder joint.

The examiner's findings served as the basis for the VA's unemployability award — a 20% disability based on arm motion limited at shoulder level. Tr. 387. A subsequent shoulder exam was unremarkable, except for some tenderness over the large triangular muscle extending over the back of the neck and the right shoulder. Tr. 479. The physician found no pain or grinding with rotation, and no limited motion. *Id*. Diagnostic imaging shows a normal right shoulder. Tr. 408. This evidence indicates that right shoulder bursitis resolved and suggests no functional limitation due to right shoulder pain and grinding. A reasonable mind would accept the evidence as adequate to show Peterson can do light work despite the VA award for right shoulder bursitis. The most recent examination and diagnostic imaging do not implicate a need for limitations in pushing and pulling.

Evidence about the right ankle. Peterson based her claim for right ankle impairment on slipping on some stairs during active duty military training in 1993. Tr. 382. The VA examiner

diagnosed "right ankle strain" and reported a "moderate limited range of motion of the ankle." Tr. 382.  The VA awarded a 10% disability based on the limited motion.

Peterson claims her right ankle is usually swollen due to a floating bone chip, but diagnostic imaging shows no foreign body.  Tr. 305.  The imaging shows no acute fracture, dislocation, or destructive process.  *Id*.  Treating physicians observed no swelling.  Tr. 479.  Peterson sought no treatment for right ankle strain.  Failing to seek treatment shows that right ankle strain resolved.  At the time of her discharge, Peterson had no limitations in walking.  Tr. 200.  A reasonable mind would accept the evidence about the right ankle as adequate to show Peterson can do light work because her ankle does not prevent her from walking or standing, she has a good range of motion, and she sought no treatment for right ankle strain.

Evidence about obesity.  Although Peterson did not base her claim on obesity, the ALJ also considered evidence of Peterson's weight and its effect on her ability to function.  Peterson's weight and height indicates obesity.  The record includes medical recommendations for weight loss, Tr. 261, 480, but no evidence of functional limitation due to obesity.

Evidence about past work.  To the extent Peterson questions whether her military work qualified as past relevant work, the ALJ properly considered Peterson's administrative specialist work.  The ALJ considers work done within the past 15 years, "that was substantial gainful activity," and that lasted long enough for the claimant to learn to do the work.  20 C.F.R. § 404.1565(a).  Peterson worked as an administrative specialist from 1988 to 2008.  That work fell within the 15 years preceding her application.  In 2007, the year before her discharge, Peterson earned $16,913.58, Tr. 120, as an administrative specialist.  Those earnings equate to $1,409.46 per month, and exceed the 2007 substantial gainful activity level of $900.00 per month.  She worked as an administrative

specialist for more than 20 years.  Twenty years is long enough for Peterson to learn to do her job.

Peterson's military work qualifies as past relevant work because it fell within the 15 years preceding

her application, was earned at a substantial gainful activity level, and was done long enough to learn

the job.  The tasks Peterson performed are done in many civilian jobs.  The fact that Peterson cannot

return to the military because she can no longer carry and fire a military weapon, move two miles with

a fighting load, wear chemical warfare equipment, take an individual fighting position, rush under

direct fire, and deploy, Tr. 200, does not change this result.

## CONCLUSION

Having determined that substantial evidence supports the denial of the application for

disability insurance benefits, and the Commissioner made no legal error, the Court DENIES

Peterson's request for relief and AFFIRMS the Commissioner's decision.

IT IS SO ORDERED this 15th day of January, 2014.


_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE